UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| JAMES A. JENKINS, JR. | CIVIL ACTION |
|---|---|
| VERSUS | NO. 07-0216 |
| LYNN COOPER, WARDEN AVOYELLES CORR. CTR. LA. DEPT. CORRECTIONS | SECTION "S"(4) |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I. Factual Background

The petitioner, James A. Jenkins, Jr. ("Jenkins"), is an inmate currently incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[2] On March 23, 2000, Jenkins and co-

---

[1] Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

defendants, Keith Lipton and Danon Barton, were charged by a Jefferson Parish Grand Jury in an eleven count indictment with the following crimes:[3]

1. conspiracy to commit armed robbery;
2. aggravated burglary of the residence belonging to Supatra Bass;
3. armed robbery of Superk Varoon;
4. armed robbery of Supatra Bass;
5. simple burglary of an automobile belonging to Leng Kiv;
6. attempted armed robbery of Leng Kiv;
7. attempted armed robbery of Cheyarith Kiv;
8. aggravated kidnapping of Eric Tran;
9. aggravated kidnapping of Lien Tran;
10. aggravated kidnapping of Rebecca Nguyen; and
11. possession of stolen property in currency over $1000.

On July 13, 2000, the District Attorney amended the indictment to correct the spelling of the victim's name in Count 3 from Varoon to Uaroon, to correct the date of the offense in Count 6 from August 9, 1999 to August 12, 1999, to change Counts 8, 9, and 10 from aggravated kidnapping to armed robbery, and to add Count 12, aggravated burglary of the residence owned by Eric Tran.[4] That same day, the District Attorney dismissed the newly added Count 12. Later, on July 20, 2000, the indictment was amended again to charge only Barton and Jenkins in another Count 12, with the aggravated burglary of the residence belonging to Eric and Lien Tran.[5]

The record reflects that, between August 9, 1999, and August 17, 1999, the co-defendants conspired to and did commit armed robberies upon Asian people leaving Wal-Mart stores in Jefferson Parish, believing that these people would be likely to carry cash which could be readily

---

[3] St. Rec. Vol. 1 of 9, Indictment, 3/23/00; Grand Jury Minutes, 3/23/00.

[4] *Id.*, as amended 7/13/00.

[5] *Id.*, as amended 7/20/00.

stolen.[6] Specifically, on August 9, 1999, three men entered the home of Supatra Bass and robbed the occupants at gunpoint after she and her eldest son, Uaroon, returned from Wal-Mart. Uaroon said that there were two black men who entered the house, and both Bass and Uaroon said they saw a dark, American-made car parked near their house before the men entered the home.[7] The next day, Bass found a cellular telephone that did not belong to anyone in the home. Jefferson Parish Deputies subsequently learned that the telephone belonged to Keith Lipton. Bass and Uaroon both identified Lipton from a photographic line-up.

On August 12, 1999, Leng and Cheyarith Kiv, had been vacationing in New Orleans and were on their way home to Texas. Between 12:30 and 1:00 a.m., they stopped at Wal-Mart. When the Kivs returned to their automobile, they discovered that the drivers' side window was smashed and that her luggage and other belongings were missing. Shortly thereafter, a dark-colored car with three men inside approached. Mrs. Kiv testified that a young man exited the car wearing a bandanna and a hat, pointed a gun at her, and demanded her purse. Mr. Kiv said that the man attempted to rob him as well. Mr. Kiv saw another man exit the car, while another person remained in the car. The couple successfully eluded the men by running inside of Wal-Mart. Mr. Kiv described the car as having a "loud" muffler, and Mrs. Kiv said the car was "noisy." A Jefferson Parish Detective forwarded photographic lineups containing photos of Barton, Lipton, and Jenkins, to a police department in Texas. Mr. Kiv was unable to identify anyone, and Mrs. Kiv apparently was afraid to even look at the lineups.

---

[6]The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal. *State v. Jenkins*, 857 So.2d 1185, 1186 (La. App. 5th Cir. 2003); St. Rec. Vol. 3 of 9, 5th Cir. Opinion, 02-KA-161, p. 3, 9/30/03.

[7]The detailed facts appear in the Louisiana Fifth Circuit's opinion issued after Barton's appeal after a jury trial. *State v. Barton*, 857 So.2d 1189, (La. App. 5th Cir. 2003); St. Rec. Vol. 3 of 9, 5th Cir. Opinion, 02-KA-163, p. 3-8, 9/30/03.

On August 14, 1999, around midnight, after finishing their shifts as waitresses, Rebecca Nguyen and her sister, Lien Tran, went to Wal-Mart. They shopped and then returned to the Tran's residence in Kenner. As the two women and Eric Tran brought the purchases into the house, a car drove up and parked. Two men wearing bandannas on their faces approached and ordered everyone inside at gunpoint. The men told them to lie on the floor and demanded money. One of the men demanded Nguyen's purse, but she had left it in the car. All she had in her pocket was her car key, which the man took. Nguyen saw a third man enter the house later. Although he was not wearing a mask, she was subsequently unable to identify anyone.

Tran, who was four months pregnant at the time, said that the gunman demanded to see the "safe." She showed them the safe in the bedroom, which did not contain any cash. Ultimately, Tran handed over a check that she intended to deposit. The men continued to demand cash, and threatened to kill her. They also took Mr. Tran's bag and his wallet.

The men ransacked the house and found a locked box under the bed. One of the Trans opened the box containing $50,000 in cash and a "V" shaped necklace belonging to Mr. Tran's mother, which the men took. Mrs. Tran stated that a third man had entered the house and that all three men were rummaging through the box.

Nguyen and Mr. Tran said the car that pulled up at the house was a dark-colored car, and Mr. Tran said the car had a loud muffler. None of the victims were able to identify anyone as the perpetrators from photographic lineups. However, Mr. Tran's bag was subsequently recovered, and it contained fingerprints that were determined to belong to Lipton.

On August 14, 1999, Barton, Lipton, and Jenkins used cash to purchase three automobiles at Affordable Used Cars. Barton paid $4,350.00, Lipton paid $5,200.00, and Jenkins paid $3,500.00.

Later, on August 17, 1999, Lipton's residence was searched and the police recovered the necklace taken from the Tran's residence. New Orleans police officers subsequently stopped Barton in his new car with Lipton, and Lipton was arrested pursuant to the arrest warrant. Barton later made a taped confession to police. Jenkins was later arrested on August 27, 1999.

On July 17, 2000, Lipton entered a plea of guilty to each of the eleven counts in the original indictment, as corrected by amendments on July 13, 2000.[8] After waiver of delay and entry of a guilty plea to a multiple bill, he was sentenced to serve concurrent sentences of 49 years and six months on each of Counts 1, 3, 4, 6, 7, 8, 9, and 10, 30 years on Count 2, 12 years on Count 5, and 10 years on Count 11.[9]

On February 20, 2001, Jenkins entered a plea of guilty to each of the original eleven counts, as amended on July 13, 2000.[10] After waiver of legal delays, he was sentenced to serve 20 years in prison on each of Counts 1, 2, 3, 4, 6, 7, 8, 9, and 10. He was also sentenced to serve five years on each of Counts 5 and 11. The record makes no mention of Count 12 at this hearing.

Shortly thereafter, Jenkins was allowed to withdraw his guilty pleas entered on February 20, 2001.[11] He then entered pleas of guilty, under *State v. Crosby*, 338 So.2d 584 (La. 1976),[12] to the eleven amended original counts and to Count 12, the aggravated burglary of the Trans's home,

---

[8] St. Rec. Vol. 1 of 9, Plea Minutes (Lipton), 7/17/00; Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, 7/17/00.

[9] *Id.*; St. Rec. Vol. 1 of 9, Plea Minutes (2) (Lipton), 7/17/00; Waiver of Rights - Plea of Guilty Multiple Offender, 7/17/00; Multiple Bill (Lipton), 7/17/00.

[10] St. Rec. Vol. 1 of 9, Plea Minutes (Jenkins), 2/20/01; Defendant's Acknowledgment of Constitutional Rights on Entry of Plea of Guilty, 2/20/01; St. Rec. Vol. 6 of 9, Plea Transcript (Jenkins), 2/20/01.

[11] St. Rec. Vol. of 9, Minute Entry (Jenkins), 3/14/01; Plea Minutes (Jenkins), 3/14/01; ; St. Rec. Vol. 6 of 9, Plea Transcript (Jenkins), 3/14/01.

[12] Under Louisiana law, a *Crosby* plea allows the defendant to reserve the right to appeal the denial of his motion to suppress.

which was added on July 20, 2000. He was sentenced to serve, concurrently, 20 years in prison on each of Counts 1, 2, 3, 4, 6, 7, 8, 9, 10, and 12 and 5 years on each of Counts 5 and 11, for a total of 20 years in prison. On May 10, 2001, Jenkins received an additional six months in prison to be served in Jefferson Parish Prison on a contempt charge related to his testimony in Barton's trial.[13]

The third defendant, Barton, was tried before a jury on March 14 through 17, 2001, and was found guilty on Counts 1, 6, 7, 8, 9, 10, 11, and 12.[14] He was found to be not guilty on Counts 2 through 5.[15] He was later sentenced on April 12, 2001, to serve consecutive five year sentences on each of Counts 1, 6, and 7, and one year sentences on each of Counts 8, 9, 10, 11, and 12, for a total of 20 years in prison.[16]

On direct appeal, Jenkins's counsel raised two grounds for relief:[17] (1) the Trial Court erred in denying the motion to suppress his statements, because the State did not prove that he was given his *Miranda* warnings; and (2) he was denied adequate review of the motion to suppress, because a portion of the hearing could not be transcribed. The Louisiana Fifth Circuit affirmed the conviction and sentence on September 30, 2003, finding no merit to either claim.[18]

---

[13]St. Rec. Vol. 2 of 9, Contempt Hearing Minutes (Jenkins), 5/10/01.

[14]St. Rec. Vol. 1 of 9, Trial Minutes (Barton), 3/14/01; Trial Minutes (Barton), 3/15/01; Trial Minutes (Barton), 3/16/01; Trial Minutes (Barton), 3/17/01; Verdict Count I (Barton), 3/17/01; Verdict Count VI (Barton), 3/17/01; Verdict Count VII (Barton), 3/17/01; Verdict Count VIII (Barton), 3/17/01; Verdict Count IX (Barton), 3/17/01; Verdict Count X (Barton), 3/17/01; Verdict Count XI (Barton), 3/17/01; Verdict Count XII (Barton), 3/17/01.

[15]St. Rec. Vol. 1of 9, Verdict Count II (Barton), 3/17/01; Verdict Count III (Barton), 3/17/01; Verdict Count IV (Barton), 3/17/01; Verdict Count V (Barton), 3/17/01.

[16]St. Rec. Vol. 2 of 9, Sentencing Minutes (Barton), 4/12/01.

[17]St. Rec. Vol. 6 of 9, Appeal Brief, 02-KA-0161, 7/1/02; Appeal Brief, 02-KA-0161, 5/12/03 (after trial court hearing on remand to determine availability of motion transcript); *see also*, Hearing Transcript, 10/2/02.

[18]*State v. Jenkins*, 857 So.2d at 1185; St. Rec. Vol. 3 of 9, 5th Cir. Opinion, 02-KA-161, 9/30/03.

Jenkins did not timely seek further review of this ruling.[19] His conviction therefore became final 30 days later, on October 30, 2003. *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("a conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

## II.  Procedural History

Almost one year later, on September 14, 2004, Taylor submitted an untimely[20] writ application to the Louisiana Supreme Court raising the two claims previously raised in his direct appeal.[21] The Louisiana Supreme Court denied the application without reasons on November 28, 2005.[22]

## III.  Federal Petition

On March 26, 2007, the Clerk of Court filed Jenkins's petition for federal habeas corpus relief, in which he raised two grounds for relief:[23] (1) the Trial Court erred in denying the motion to suppress his statements, because the State did not prove that he was given his *Miranda* warnings; and (2) adequate review can not be made, because portions of the transcript for the motion to

---

[19]La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. *See also* La. Code Crim. Proc. art. 922(A).

[20]Applying La. S. Ct. Rule X§5(a), and the applicable mailbox rule, *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006), Jenkins's pro se writ application was signed, postmarked, and filed untimely.

[21]St. Rec. Vol. 9 of 9, La. S. Ct. Writ Application, 04-KH-2533, 10/15/04 (signed 9/14/04, postmarked 9/15/04); St. Rec. Vol. 2 of 9, La. S. Ct. Letter, 2004-KH-2533, 10/15/04 (postmarked 9/15/04).

[22]*State ex rel. Jenkins v. State*, 916 So.2d 130 (La. 2005); St. Rec. Vol. 9 of 9, La. S. Ct. Order, 2004-KH-2533, 11/28/05.

[23]Rec. Doc. No. 3.

suppress are missing. The State filed a response in opposition to Jenkins's petition, arguing that the federal petition was untimely filed.[24]

IV.     **Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[25] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on December 7, 2006.[26] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In this case, the State argues that Jenkins's petition was not timely filed. The Court finds that the limitations defense is dispositive of Jenkins's petition for the reasons set forth below.

V.      **Statute of Limitations**

---

[24]Rec. Doc. No. 8.

[25]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Jenkins's petition on March 26, 2007, when the filing fee was paid. Jenkins's initially did not date or sign the petition, but it did bear a notary signature on the memorandum in support dated December 7, 2006. He eventually corrected the deficient petition and signed it on December 23, 2006. Affording him every benefit, the Court will consider December 7, 2006, the earliest date on which he could have been submitted the pleadings to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[27] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). Jenkins's conviction became final on October 30, 2003, when he did not seek further review of his direct appeal in the Louisiana Supreme Court.

Under the plain language of § 2244, Jenkins had until Saturday, October 30, 2004, or the next business day, Tuesday, November 2, 2004, to file a timely federal application for habeas corpus relief, and he failed to do so.[28] Thus, literal application of the statute would bar Jenkins's § 2254 petition as of that date unless he is entitled to tolling as provided for by the AEDPA.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a State post conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such

---

[27]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
A.     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
B.     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
C.     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
D.     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

[28]Although November 1 was a Monday, that date is a recognized state holiday in Louisiana. Rev. Stat. Ann. § 1:55(A).

as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-414 (2005); *Williams v. Cain*, 217 F.3d 303, 306-07 n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir.), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). The United States Fifth Circuit has clarified its prior opinions to the contrary and resolved that timeliness in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams v. Cain*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'") (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2nd Cir. 1999), *aff'd*, 531 U.S. 4 (2000)); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001) (motion to withdraw a guilty plea is "other collateral review"), *aff'd by* 488 F.3d 187 (3d Cir. 2007). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

In this case, Jenkins's AEDPA filing period began to run on October 31, 2003, the day after his conviction was final. The filing period ran for 365 days, until November 2, 2004, when it expired. Jenkins had no other properly filed state post-conviction or other collateral review pending during that time period.

As noted above, Jenkins's only Louisiana Supreme Court writ application submitted on September 14, 2004, was not timely filed in accordance with Louisiana law. As discussed, under La. S. Ct. Rule X§5, an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment. *See Causey*, 450 F.3d at 604-05; *Marshall v. Cain*, 155 Fed. Appx. 769 (5th Cir. 2005); *see also* La. Code Crim. Proc. art. 922(A). A writ application which fails to comply with La. S. Ct. Rule X§5(a) is not properly filed because it is untimely, and it is not pending post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler v. Cain*, 533 F.3d 314, 318-319 (2008); *Williams v. Cain*, 217 F.3d at 309-11; *see Pace*, 544 U.S. at 414. Jenkins does not benefit from any statutory tolling for his untimely writ application to the Louisiana Supreme Court.[29]

Even if a reviewing Court were to consider that filing in the tolling calculation, Jenkins's petition would still be untimely. His AEDPA filing period would begin, as above, on October 31, 2003. It would run from that date for 319 days, until September 14, 2004, when his untimely writ application was submitted to the Louisiana Supreme Court. That writ would remain pending, under this alternative calculation, until November 28, 2005, when it was denied. The AEDPA filing period

---

[29]The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848. The petitioner has not provided, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling.

would begin to run again on November 29, 2005, for an additional 46 days, until January 13, 2006, when it would expire. Jenkins is deemed to have filed his federal petition on December 7, 2006, almost 11 months after this alternative date. Thus, even under the most generous of calculations, Jenkins's federal petition is untimely.

Jenkins's federal petition is deemed filed on December 7, 2006, which was over two years after the AEDPA filing period expired on November 2, 2004. Jenkins's federal petition must be dismissed as untimely.

### VI. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that James A. Jenkins, Jr.'s petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 11th day of May, 2009.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE